DAVID K. TELLEKSON (admitted *pro hac vice*)
WA State Bar #33523
FENWICK & WEST LLP
1191 Second Avenue, 10th Floor
Seattle, WA 98101
Tel:   206.389.4510
Email:  dtellekson@fenwick.com

CATHERINE MCCORD (admitted *pro hac vice*)
NY State Bar #5168992
FENWICK & WEST LLP
902 Broadway, Ste. 14
New York, NY 10010
Tel:   212.430.2600
Email:  cmccord@fenwick.com

AFRICA SWAFFORD (CSB #305558)
FENWICK & WEST LLP
228 Santa Monica Blvd., Ste. 300
Santa Monica, CA 90401
Tel:   206.389.4510
Email:  rswaffordharris@fenwick.com

Attorneys for Plaintiff
AVALYN PHARMA, INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVALYN PHARMA, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>RICHARD G. VINCENT, SELLER REPRESENTATIVE,<br><br>    Defendant. | Case No.: 20CV2267 GPC KSC<br><br>**PLAINTIFF AVALYN PHARMA, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY AND ENJOIN WILSON SONSINI GOODRICH & ROSATI**<br><br>Date:   November 5, 2021<br>Time:   1:30 p.m.<br>Dept:   Courtroom 2D<br>Judge:  Honorable Gonzalo P. Curiel |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

I. STATEMENT OF FACTS............................................................................ 2

    A.    Wilson Represents Avalyn Before the Acquisition ............................. 2

    B.    Wilson Represents Windward Before the Acquisition ....................... 3

    C.    Avalyn Acquires Windward ................................................................ 3

    D.    On Behalf of Former Windward Stockholders, Defendant Vincent Demands Transfer of the Patent Rights .................................. 4

    E.    Avalyn Seeks Declaratory Relief; Wilson Appears for Defendant Vincent .............................................................................. 5

II. ARGUMENT ................................................................................................. 7

    A.    Legal Standard for Disqualification..................................................... 7

        1.    Disqualification When Matters Are Substantially Related ........ 7

    B.    Wilson Has a Conflict of Interest That Requires the Firm to Be Disqualified from Representing Mr. Vincent ................................... 10

        1.    Disqualification is Necessary Because Wilson's Representation of Avalyn Is "Substantially Related" to This Litigation ................................................................... 10

        2.    Disqualification is Further Supported Because of Wilson's Representation of Windward, Which Was Acquired by Avalyn ..................................................................... 13

    C.    Avalyn Timely Sought Disqualification After Wilson's Conflicts Became Clear .................................................................... 15

CONCLUSION ...................................................................................................... 15

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*All American Semiconductor, Inc. v. Hynix Semiconductor, Inc.*,
   Nos. C 07-1200, C07-1207, C07-1212, C- 06-2915, 2008 WL
   5484552 (N.D. Cal. Dec. 18, 2008) ............................................................ 8, 9, 10

*City Nat. Bank v. Adams*,
   96 Cal. App. 4th 315 (2002) ................................................................................ 14

*Comden v. Superior Court*,
   20 Cal.3d 906 (1978) ............................................................................................. 7

*Emle Industries, Inc. v. Patentex, Inc.*,
   478 F.2d 562 (2d Cir. 1973) ................................................................................ 11

*Flatt v. Superior Court*,
   9 Cal.4th 275 (1994) ............................................................................... 8, 10, 14

*H.F. Ahmanson & Co. v. Salomon Bros., Inc.*,
   229 Cal. App. 3d 1445 (1991) ............................................................................... 9

*In re Complex Asbestos Litig.*,
   232 Cal. App. 3d 572 (1991) .............................................................................. 15

*In re Cty. of Los Angeles*,
   223 F.3d 990 (9th Cir. 2000) ................................................................................. 7

*Jessen v. Hartford Casualty Ins. Co.*,
   111 Cal. App. 4th 698 (2003) ............................................................................ 8, 9

*Kennedy v. Eldridge*,
   201 Cal. App. 4th 1197 (2011) .............................................................................. 9

*Kim v. The True Church Members of Holy Hill Cmty. Church*,
   236 Cal. App. 4th 1435 (2015) .............................................................................. 7

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*,
   105 F. Supp. 3d 1100 (E.D. Cal. 2015) ........................................................... 8, 15

*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*,
   69 Cal. App. 4th 223 (1999) ............................................................................. 8, 9

*Oliver v. SD-3C, LLC*,
   No. C 11-01260 JSW, 2011 WL 13156460 (N.D. Cal. Aug. 4, 2011) ........ *passim*

*People ex rel. Deukmejian v. Brown*,
   29 Cal.3d 150 (1981) ........................................................................................... 14

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Trone v. Smith*,
   621 F.2d 994 (9th Cir. 1980) ................................................................................ 9

*U.S. v. Wunsch*,
   84 F.3d 1110 (9th Cir. 1996) ................................................................................ 7

*ViChip Corp. v. Lee*,
   No. C 04-2914 PJH, 2004 WL 2780170 (N.D. Cal. Dec. 3, 2004) ....................... 7

**OTHER AUTHORITIES**

California Rules of Professional Conduct Rule 1.9 .................................................. 8

# INTRODUCTION

Wilson Sonsini Goodrich & Rosati ("Wilson") is irreconcilably conflicted and should not be permitted to continue representing Defendant Vincent—or otherwise participate in this litigation—against its former client, Plaintiff Avalyn Pharma, Inc. ("Avalyn"), because the subject matter at-issue is substantially related to its prior representation.

This case concerns Avalyn's efforts to develop and commercialize a pharmaceutical product covered by Patent Rights acquired by Avalyn from Windward Pharma Inc. ("Windward") pursuant to a March 2017 Stock Purchase Agreement ("SPA"). Wilson represented Avalyn for six years, serving not only as its IP counsel, but also providing litigation strategy and analyses related to diligence requests. In so doing, Wilson acquired highly confidential and proprietary information about Avalyn. This information included Avalyn's strategies to prosecute patents and develop products covered by those patents, Avalyn's overall product profile, including as it pertains to development covered by the Patent Rights at issue here. Wilson now stands adverse to Avalyn, and seeks an order requiring Avalyn to "immediately convey" Avalyn's Patent Rights to its client, Defendant Vincent. Wilson cannot honor its ethical duties to its former client Avalyn while representing its current client Defendant Vincent.

But that is not the end of Wilson's conflicts. Wilson was not only Avalyn's counsel, it was also Windward's counsel. Like Avalyn, Windward's research focused on inhalable products for the treatment of idiopathic pulmonary fibrosis ("IPF") and other diseases. Wilson served as Windward's patent counsel for almost four years, through execution of the SPA in 2017, during which time it prepared and prosecuted the Patent Rights at the heart of this case, and gained proprietary, confidential information also relevant and material to this case. Pursuant to the SPA, Windward became an Avalyn subsidiary. Put differently, Windward is now Avalyn. Wilson is now adverse to Avalyn, and seeks to strip it of the Patent Rights

that it prosecuted on its behalf. Wilson's conflict of interest could not be starker.

Although Wilson has acquired confidential information that is material to this case from its former clients Avalyn and Windward, and there is an irrebuttable presumption that Wilson obtained material confidential information in its substantially related representations of Avalyn and Windward, it has not sought a conflict waiver. Instead, it now represents a former Windward shareholder in a suit against Avalyn. No prophylactic measure can cure Wilson's divided interests and loyalties. Wilson should be disqualified from representing Defendant Vincent and enjoined from participating in this matter in any way.

## I. STATEMENT OF FACTS

### A. Wilson Represents Avalyn Before the Acquisition

Avalyn is a biopharmaceutical company that was formed in 2010 to develop products to treat severe pulmonary diseases, including idiopathic pulmonary fibrosis ("IPF").[1] ECF No. 1 at ¶¶ 1, 9. At inception, Avalyn's lead asset was inhaled pirfenidone (AP01 or pirfenidone).

In 2011, Avalyn hired Wilson as its counsel. *See* Declaration of Bruce Montgomery ("Montgomery") at ¶ 3; Declaration of Catherine McCord ("McCord"), Ex. A (Avalyn Engagement Letter). Wilson served as Avalyn's counsel from 2011 until around April 2017. The individuals who represented Avalyn included Peter Munson, Lee Johnson, Jeff Guise, and Val Zunic. Messrs. Johnson and Zunic still work for Wilson. As Avalyn's counsel, Wilson helped Avalyn develop, prepare, and prosecute its patents covering AP01. *Id.* ¶ 5. But Wilson's role was not limited to patent prosecution. Wilson also provided legal counsel related to Avalyn's potential infringement liability for AP01, as well as freedom to operate analyses related to AP01 in connection with due diligence for potential investors. *Id.* at ¶ 6; McCord, Ex. B (Sept. 2015 correspondence between T. Moore and M. Surber). In these roles, Wilson had access to confidential and

---

[1] Avalyn was formerly known as "Genoa Pharmaceuticals, Inc."

Case 3:20-cv-02267-RSH-KSC   Document 29-1   Filed 08/20/21   PageID.275   Page 7 of 20

propriety Avalyn information related to AP01, including information on possible formulations, preclinical pharmacology, pharmacokinetic and stability data, dosing, indications, and a proposed clinical development plan. Montgomery at ¶¶ 5-6.

In addition to its extensive work related to AP01, Wilson provided Avalyn with legal advice related to nintedanib, another potential treatment for IPF. Wilson thus became privy to Avalyn's strategies for developing and commercializing products to treat IPF, including nintedanib, and Avalyn's views on the therapeutic and commercial potential of various IPF treatments. *Id.* at ¶ 9.

### B.  Wilson Represents Windward Before the Acquisition

Windward was founded in October 2013 to explore the possible reformulation of known compounds as inhaled products to treat pulmonary diseases. Shortly after its founding, Windward also hired Wilson to serve as its counsel. *Id.* at ¶ 11; McCord, Ex. C (Windward Engagement Letter). As Windward's counsel, Wilson developed and prosecuted patents covering IPF treatments. *Id.* These included patent applications covering nintedanib, imatinib, and sorafenib, the Patent Rights that are at issue in this litigation. *Id.*; *see also* ECF No. 1-2 at 1. Wilson likewise acquired confidential information about Windward's product profile and the potential commercial and therapeutic benefits of its products. Montgomery at ¶ 11. It also acquired confidential information about the potential safety and efficacy of these products and the competitive and regulatory environment they would exist in. *Id.*

### C.  Avalyn Acquires Windward

In early 2017, Avalyn began negotiations to acquire Windward. At the time, Wilson was still counsel to both companies. In fact, Wilson was conducting legal work for Avalyn about "third party negotiations" while negotiations were ongoing, including from March 1, 2017 to March 13, 2017—the day the SPA was signed. Montgomery at ¶¶ 7-8; *see also* ECF No. 1-2 at 1. Under the SPA, Avalyn acquired the outstanding stock in Windward—effectively merging the latter into the former.

MEMO ISO MOTION TO DISQUALIFY         3         CASE NO. 3:20-cv-02267-GPC-KSC

*See id.* § 2.01.

Under the SPA, Avalyn acquired the Windward Patent Rights, which Wilson had prepared and prosecuted. *See id.* § 3.07. Windward, its assets and its liabilities were also subsumed into Avalyn. But the former Windward stockholders did not lose all financial interest in the Patent Rights. If Avalyn met development milestones for patented products—called "Acquisition Products"—it would make payments to former Windward stockholders. *Id.* § 2.03(a)-(c). The SPA required Avalyn to take "commercially reasonable efforts" to "investigate the therapeutic and commercial potential of the Patent Rights" and "develop and commercialize at least one Acquisition Product." *Id.* § 2.05. If, however, Avalyn failed to do so, the Seller Representative (Defendant Vincent)—on behalf of the former Windward stockholders—could force Avalyn to transfer the Patent Rights to a third party. *Id.* § 2.05(c).

### D. On Behalf of Former Windward Stockholders, Defendant Vincent Demands Transfer of the Patent Rights

In September and October 2020, Avalyn received letters from Kirkpatrick & Sabarsky LLP on behalf of Defendant Vincent and the former stockholders. McCord, Ex. D (Sept. 10, 2020 Letter from M. Sabarsky to B. Montgomery and N. McKinley); Ex. E (Oct. 13, 2020 Letter from M. Sabarsky to D. Tellekson). In the October 13 letter, Kirkpatrick claimed that Avalyn failed to use commercially reasonable efforts to develop and commercialize an Acquisition Product. *Id.*, Ex. E. The letter outlined the purported financial concerns of former stockholders like Defendant Vincent. Regarding inhaled nintedanib, Kirkpatrick claimed that the "lack of timely commercially reasonable efforts" could "result in lost revenue well into the billions of dollars for the nintedanib program alone." *Id.* at 2. Kirkpatrick expressed a similar concern regarding imatinib, another Acquisition Product. *Id.* Wilson provided legal counsel to both Avalyn and Windward on nintedanib; it also provided legal counsel to Windward for imatinib. Montgomery at ¶¶ 9, 11. While

providing that advice, Wilson received confidential information about those products, their therapeutic benefits, and potential barriers to commercialization. *Id.* at ¶¶ 6, 9, 11. Defendant Vincent, then through Kirkpatrick, was asserting a desire to wrest those compounds from Avalyn and Windward so that he and the rest of the former Windward stockholders could transfer them to an entity of Defendant Vincent's choosing and then monetize the Patent Rights for their own benefit and to the detriment of Wilson's former clients.

In support of its position that Avalyn failed to use commercially reasonable efforts, Kirkpatrick compared Avalyn's efforts for products it acquired through Windward to Avalyn's efforts for AP01. Ex. E at 5. As noted above, AP01 was Avalyn's lead asset at the time the SPA was executed. Wilson advised Avalyn regarding the development and commercialization of AP01. Finally, Kirkpatrick accused Avalyn of failing to "adequately and reasonably prosecute[]" the "underlying Patent Rights" for imatinib. *Id.* Wilson previously prepared patent applications and advised Windward about the prosecution of the patent applications that included imatinib. Thus, Wilson had been counsel for Windward regarding the patents covering products that Defendant Vincent, through Kirkpatrick, claimed Avalyn had failed to use commercially reasonable efforts to develop (nintedanib) or prosecute (imatinib), and had been counsel for Avalyn regarding patents for a product (AP01) Defendant Vincent, again through Kirkpatrick, used as a measuring stick for Avalyn's actions with respect to nintedanib and imatinib (both acquired from Windward).

**E. Avalyn Seeks Declaratory Relief; Wilson Appears for Defendant Vincent**

After exchanging letters with Kirkpatrick, Avalyn initiated this proceeding seeking declaratory relief. *See* ECF No. 1. Avalyn sought an order declaring that (1) it did not breach the SPA; (2) violation of the information rights provision is not a basis for transfer of the Patent Rights; and (3) Avalyn is not required to transfer the

Patent Rights. *Id*. at 14.

Wilson appeared as counsel for Defendant Vincent. Since appearing in the case, Wilson has vociferously argued that information pertaining to AP01—a product for which it received considerable Avalyn confidential materials and provided Avalyn extensive legal advice—is relevant to this proceeding. Indeed, on May 6, 2021, Defendant Vincent's counsel claimed repeatedly that "Avalyn's treatment of pirfenidone is at the core of this case." McCord, Ex. F (May 6, 2020 Letter from J. Baskin to D. Tellekson) at 1, 17. Counsel further claimed that "[p]irfenidone is a similarly situated therapeutic product to the Patent Rights and Acquisition Products at issue in this case, including nintedanib." *Id.* at 2. As Avalyn's former counsel, Wilson had access to and would ordinarily be expected to have learned confidential Avalyn information concerning not only pirfenidone, but Avalyn's strategy to develop and commercialize its patents generally. Wilson also has confidential and proprietary information about the Patent Rights that Avalyn acquired when it acquired Windward—as explained above, Wilson advised Windward on the preparation and prosecution of those patents. Montgomery at ¶ 11.

As litigation progressed, particularly with discovery-related document review, Wilson's extensive conflicts began to crystallize. When it became clear that Wilson actually, not just presumptively, possessed material and confidential information that is substantially related to this dispute, Avalyn's counsel prepared a letter regarding this conflict of interest and promptly notified Wilson. Avalyn's letter to Wilson outlined its extensive conflicts, and included explanation that Wilson received material and confidential information through its prior representation of Avalyn and Windward. McCord, Ex. G (Aug. 10, 2021 Letter from D. Tellekson to J. Flynn). Wilson's response failed to address these significant conflicts of interest. *Id.*, McCord Ex. H (Aug. 16, 2021 Letter from J. Flynn to D. Tellekson). Instead, Wilson attempted to artificially bifurcate its pre-merger work

Fenwick & West LLP
Attorneys at Law

for Avalyn and Windward with conduct that occurred post-merger, and claimed that only the latter is relevant here. *Id.* at 1-2. But, as explained more fully below, that is not the test for determining whether a conflict exists. Instead, the issue is whether Wilson acquired confidential Avalyn (which includes Windward) information that is relevant to this dispute. On that front, Wilson had no good answer, which prompted this motion.

## II. ARGUMENT

Wilson has material and irreconcilable conflicts of interest in this proceeding. Wilson's conflicts stem from (1) its prior representation of Avalyn; and (2) its prior representation of Windward. Because of these conflicts, Wilson should be disqualified as Defendant Vincent's counsel and enjoined from otherwise participating in this case.

### A. Legal Standard for Disqualification

Motions to disqualify are decided under state law. *In re Cty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). Disqualification is within the discretion of the trial court as an exercise of its inherent powers. *ViChip Corp. v. Lee*, No. C 04-2914 PJH, 2004 WL 2780170, at *1 (N.D. Cal. Dec. 3, 2004) (citing *U.S. v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996)). In reviewing a motion for disqualification, the paramount concern must be to preserve public trust in the scrupulous administration of justice and integrity of the bar. *Comden v. Superior Court*, 20 Cal.3d 906, 915 (1978). The "recogniz[ed and] important right to counsel of [one's] cho[osing] must yield … to considerations of ethics which run to the very integrity of our judicial process." *Comden v. Superior Court*, 20 Cal.3d 906, 915 (1978).

#### 1. Disqualification When Matters Are Substantially Related

The caselaw has developed "different standards for attorney disqualification depending on whether the conflict arises out of successive representation or simultaneous representation." *Kim v. The True Church Members of Holy Hill Cmty. Church*, 236 Cal. App. 4th 1435, 1453 (2015). In matters involving successive

representation, the "chief fiduciary value jeopardized is that of client confidentiality." *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F. Supp. 3d 1100, 1108 (E.D. Cal. 2015) (citation omitted). That said, the duty of loyalty applies in both concurrent and successive cases. *Id.* This case concerns successive representation. Put differently, this case concerns Wilson's duties to its former client, Avalyn, under Rule 1.9 of California Rules of Professional Conduct. Rule 1.9(a) creates limitations on a lawyer's ability to take positions adverse to former clients:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person* in the same or a substantially related matter in which that person's* interests are materially adverse to the interests of the former client unless the former client gives informed written consent.*

Attorneys who have received confidential information from a former client are precluded—along with their law firm—from representing a party adverse to the former client in a substantially related matter. *See Flatt v. Superior Court*, 9 Cal.4th 275, 283 (1994). Indeed, information that an attorney acquires from a client is imputed to all members of the firm. *Oliver v. SD-3C, LLC*, No. C 11-01260 JSW, 2011 WL 13156460, at *4 (N.D. Cal. Aug. 4, 2011) (finding a substantial relationship between two representations and holding that "the conflict must be imputed to the entire … firm").

To determine whether there is a substantial relationship between two matters, courts consider whether the facts support a "rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *All American Semiconductor, Inc. v. Hynix Semiconductor, Inc.*, Nos. C 07-1200, C07-1207, C07-1212, C- 06-2915, 2008 WL 5484552, at *5 (N.D. Cal. Dec. 18, 2008) (quoting *Jessen v. Hartford Casualty Ins. Co.*, 111 Cal. App. 4th 698, 713 (2003)); *Morrison Knudsen Corp. v. Hancock,*

*Rothert & Bunshoft*, 69 Cal. App. 4th 223, 234 (1999) (material information includes the "identity of all the key decision makers," the "litigation philosophy," and the "organizational structure" of the past client). The court must also examine the time spent by the attorney on the earlier case, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy. *All American Semiconductor, Inc.*, 2008 WL 5484552, at *5 (citing *Morrison Knudsen*, 69 Cal. App. 4th at 234). Avalyn need not prove that Wilson actually obtained relevant confidential Avalyn (and Windward) information material to the present litigation; instead, it need only prove that the matters in which Wilson represented Avalyn and Windward are ones in which "confidential information material to the [present] case would normally be imparted to the attorney." *Kennedy v. Eldridge*, 201 Cal. App. 4th 1197, 1208 (2011); *see also H.F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 1452 (1991) (former client need not "prove the former attorney possesses confidences which could be used to the former client's disadvantage;" disqualification turns "solely on the ground that subsequent representation, because of its substantial relationship to the former, places the attorney in a situation where he or she could breach the duty of confidentiality to the former client").

Courts do not construe the "substantial relationship" test narrowly. *Oliver*, 2011 WL 13156460, at *3. When considering whether the subject of two representations are substantially related, courts thus "ascribe to the word 'subjects' a broader definition than the discrete legal and factual issues involved in the compared representations." *Jessen*, 111 Cal. App. 4th at 712. This is because a broad relationship test serves "the most important facet of the professional relationship… [i]f there is a reasonable probability that confidences were disclosed which *could* be used against the client in later, adverse representation, a substantial relation between the two cases is presumed." *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980) (emphasis added). For this reason, once the court finds that a

"substantial relationship" between the prior and current representations, "access to confidential information by the attorney … is presumed and disqualification … is mandatory. *All Am. Semiconductor, Inc.*, 2008 WL 5484552, at *5.

### B. Wilson Has a Conflict of Interest That Requires the Firm to Be Disqualified from Representing Mr. Vincent

Here, Wilson has an irreconcilable conflict of interest arising from its prior representations of both Avalyn and its subsidiary, Windward. Those representations are directly related to this proceeding. Through those representations, Wilson was exposed to highly confidential information about Avalyn's efforts and strategies to develop and commercialize treatments for IPF. This includes information about the safety and efficacy of compounds covered by Avalyn's patents, Avalyn's product profile, the proprietary position of Avalyn's patents, Avalyn's view of the competitive environment, the potential profitability of Avalyn patents, and Avalyn's view of the regulatory environment and its clinical development plan. Montgomery at ¶¶ 5-6; ¶ 9. Information about each of these items is material to this dispute. *See* ECF No. 1-2 at § 2.05(a). Furthermore, Wilson's legal work for Avalyn included "Potential Third- Party Negotiations." Montgomery at ¶¶ 7-8. This work was conducted in the days and weeks before the SPA was signed on March 13, 2021. *Id.* at ¶ 8; McCord, Ex. I (Summary of Billed and Unbilled Services to Avalyn and Windward). Based on when Wilson did this work, it was likely reviewing Avalyn's Series A documents—which included the draft SPAs leading to the final SPA at issue here. *Id.* ¶ 8. Wilson's irreconcilable conflict thus creates a presumption of disqualification. *Flatt*, 9 Cal. 4th at 283; *Oliver*, 2011 WL 13156460, at *4.

#### 1. Disqualification is Necessary Because Wilson's Representation of Avalyn Is "Substantially Related" to This Litigation

First, Wilson has a direct conflict of interest as a result of its prior representation of Avalyn. Wilson became Avalyn's counsel in 2011. Montgomery at ¶ 3; McCord, Ex. A. It was retained to provide legal advice regarding patent

FENWICK & WEST LLP
ATTORNEYS AT LAW

counseling, patent drafting, patent prosecution, and various other matters that Avalyn might request. *Id.* at ¶ 5. Through that representation, Wilson acquired confidential information about Avalyn's potential IPF treatments and its strategy to commercialize and market those treatments. *Id.* at ¶¶ 5-6; ¶ 9. This included information about whether inhaled pirfenidone (AP01) treatments improve safety and efficacy as compared to oral pirfenidone treatments. *Id.* at ¶ 5. It also included information about Avalyn's strategy to finance the development of IPF treatments. *Id.* One of the products for which Wilson acquired this information was AP01.

The information that Wilson acquired is material to this case. In fact, it is related directly to Mr. Vincent's claim that Avalyn failed to use "commercially reasonable efforts" to "investigate the therapeutic and commercial potential of the Patent Rights." *See* ECF No. 1-2 at § 2.05. Wilson had direct insight into Avalyn's strategy and ability to develop and commercialize treatments for IPF. This includes insight into Avalyn's overall product profile, potential resource constraints, its view of the competitive landscape, and regulatory hurdles that Avalyn may face. Montgomery at ¶¶ 5-6. Wilson's clear view into Avalyn's confidential positions regarding each of these factors as they relate to IPF treatments, a disease that both AP01 and nintedanib treat, creates a conflict of interest. Even if Wilson's prior legal work for Avalyn is not "identical" to the legal and factual issues involved, the information it obtained is "relevant and material to the 'evaluation, prosecution, settlement or accomplishment of the current representation." *Oliver*, 2011 WL 13156560, at *4; *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, (2d Cir. 1973) (affirming disqualification of attorney who served as patent counsel in a case against former client and explaining that the court "need not, indeed cannot, inquire whether the lawyer did, *in fact*, receive confidential information" relevant to the current proceeding). As a result, Wilson prior representation of Avalyn is substantially related to this proceeding, and it should be disqualified.

The conflict of interest here is not abstract or theoretical. Wilson has already

FENWICK & WEST LLP
ATTORNEYS AT LAW

weaponized Avalyn's confidential information in this litigation. One of the specific IPF products that Wilson provided Avalyn patent advice on was AP01. Montgomery at ¶ 5. In this very litigation, Wilson sought sweeping discovery into AP01 and argued repeatedly that AP01 was relevant to Mr. Vincent's claims. For example, Wilson sought "all documents concerning any efforts, plans, projections, or attempts made by Avalyn to investigate the therapeutic or commercial potential of … pirfenidone." McCord, Ex. J (Defendant Vincent's First Set of RFPs) at 7. As Avalyn's counsel, Wilson had insight into this information, and knew it wanted to target that information in this case. Wilson likewise sought "[a]ll documents concerning the value or commercial potential of pirfenidone, including but not limited to any market research on pirfenidone." *Id.* at 8. Here too, Wilson had a window into Avalyn's position on pirfenidone's commercial potential and market research related to it. What's worse, Wilson sought information *directly related to its prior representation of Avalyn*. It requested, for example, "all documents concerning [Avalyn's] prosecution or maintenance of any patents concerning pirfenidone." *Id.* at 15. As explained above, Avalyn retained Wilson specifically to advise Avalyn in "patent counsel, patent drafting, and *patent prosecution*," including for AP01. And though this court disagreed with Wilson's characterization that pirfenidone was at the core of this matter, Avalyn's clinical development of pirfenidone—information about which Avalyn provided to Wilson during its legal representation (*see* Montgomery at ¶ 6)—remains relevant as a deadline for development of its separate Acquisition Product under the SPA. Avalyn has already produced extensive discovery on this issue, and Wilson seeks additional information into AP01.

   Wilson cannot brush this conflict of interest under the rug merely because the Court ruled against it on the relevance of AP01. The fact remains that Wilson was Avalyn's counsel, acquired confidential and material Avalyn (and Windward) information and sought to use that information against Avalyn here. The

appropriate course would have been for Wilson to seek a conflict waiver *before appearing* in this case, not appearing and filing counterclaims against a former client while possessing confidential information it undeniably believed was critical to this dispute.

Furthermore, during its representation of Avalyn, Wilson provided confidential, attorney-client privileged legal analysis for Avalyn concerning the same drug it now argues Avalyn has not used commercially reasonable efforts to develop—nintedanib. Montgomery at ¶ 9. Though the Patent Rights covering nintedanib had yet to be transferred, Wilson provided Avalyn with a "Nintedanib Patent Landscape Analysis" in August 2015. In that analysis, Wilson provided its understanding of Avalyn's proposed product, based on confidential information received from Avalyn, and the third-party patent landscape for the product. *Id.*

Because Wilson, as Avalyn's counsel, received confidential Avalyn information that is material to this proceeding, it should be disqualified from representing Mr. Vincent.

**2. Disqualification is Further Supported Because of Wilson's Representation of Windward, Which Was Acquired by Avalyn**

*Second*, Wilson has a conflict of interest because of its prior representation of Windward. Wilson became Windward's counsel in November 2013. McCord, Ex. C. Wilson served as Windward's IP counsel, which included providing advice about preparing and prosecuting the Patent Rights at issue here. Montgomery at ¶ 11. Specifically, Wilson advised Windward on patent filings covering nintedanib, imatinib, and sorafenib. *Id.* Those products are "Acquisition Products" under the SPA. ECF No. 1-2 at § 1.01. And they are the same products that Mr. Vincent claims Avalyn has failed to take commercially reasonable efforts to develop and commercialize. ECF No. 14 at 13, ¶ 14. As with AP01, Wilson acquired confidential information about the potential therapeutic benefits of these products, their likely commercial success, and their safety and efficacy. Montgomery at ¶ 11.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Through the SPA, Avalyn acquired Windward. As a result, Avalyn acquired the rights to confidential and proprietary information about nintedanib, imatinib, and sorafenib and the Patent Rights. Wilson is now in a position to use the confidential information it obtained as Windward's counsel against Avalyn. Indeed, the therapeutic and commercial potential of the Patent Rights that Wilson prosecuted on behalf of Windward—now Avalyn—is the key issue in this case. Regarding these Patent Rights, Wilson gained knowledge of the (1) potential safety and efficacy of the products; (2) product profiles; (3) proprietary position of the products; (4) market's current competitive environment; (5) likely profitability of the product; and (6) current regulatory environment. ECF No. 1-2 at § 2.05(a). Montgomery ¶ 11. These are all relevant factors in the "commercially reasonable efforts" analysis. ECF No. 1-2 at § 2.05(a). Wilson's work on behalf of Windward is thus "substantially related" to this litigation. Because of this substantial relationship, Wilson's "access to confidential information … is presumed and disqualification … is mandatory"; that disqualification "extends vicariously to the entire firm." *Flatt*, 9 Cal. 4th at 283.

Wilson's acquisition of confidential information from Windward is not its only conflict problem. After an attorney's relationship with a client ends, they "may not do anything which will injuriously affect [the] former client in any manner in which [the attorney] formerly represented him." *People ex rel. Deukmejian v. Brown*, 29 Cal.3d 150, 155 (1981); *City Nat. Bank v. Adams*, 96 Cal. App. 4th 315, 324 (2002) (same). That is exactly what Wilson is doing here. As counsel to Windward, it prepared and prosecuted the Patent Rights that are at issue here. Now, Wilson asks this Court to compel Avalyn to transfer those same Patent Rights, along with Avalyn's improvements thereto, to its current client. The conflict is not abstract or theoretical; it is concrete and actual. This Court should thus disqualify Wilson from representing Defendant Vincent.

### C. Avalyn Timely Sought Disqualification After Wilson's Conflicts Became Clear

Avalyn acted promptly to address Wilson's significant conflicts of interest when it became apparent that its prior representation of Avalyn and Windward were substantially related to this dispute. The scheduling order regulating discovery and other pre-trial matters was not entered until April 9, 2021. ECF No. 22. The parties jointly requested an extension to complete discovery, in part because of the need to "review documents." ECF No. 28 at 1. It was only during the discovery period and related document review that Wilson's conflicts became clear. This is not, as Wilson may suggest, "unreasonable delay." *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F. Supp. 3d 1100, 1121 (E.D. Cal. 2015) ("California courts require that delay and prejudice be 'extreme' and reach beyond 'those client interests implicated by any disqualification motion." (citing *In re Complex Asbestos Litig.*, 232 Cal. App. 3d 572, 599 (1991)). Nor will Defendant Vincent be able to articulate any "extreme prejudice" caused by disqualification. Even a "period of five months and the associated time and money spent on discovery do not make for extreme prejudice and delay." *Lennar Mare Island, LLC*, 105 F. Supp. 3d at 1121.

### CONCLUSION

For the reasons set forth above, Wilson should be disqualified from representing Defendant Vincent and enjoined from participating in this litigation.

Dated: August 20, 2021

Respectfully submitted,

FENWICK & WEST LLP

By: /s/ *David K. Tellekson*
David K. Tellekson (admitted *pro hac vice*)
Email: dtellekson@fenwick.com
Catherine McCord (admitted *pro hac vice*)
Email: cmccord@fenwick.com
Africa Swafford (CSB # 305558)
Email: rswaffordharris@fenwick.com

Attorneys for Plaintiff
AVALYN PHARMA, INC.