UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVALYN PHARMA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD G. VINCENT, SELLER REPRESENTATIVE,<br><br>Defendant. | Case No.:  20CV2267-GPC(KSC)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY AND ENJOIN DEFENSE COUNSEL WILSON SONSINI GOODRICH & ROSATI**<br><br>**[Dkt. No. 29.]** |

Before the Court is Plaintiff's motion to disqualify and enjoin defense counsel Wilson Sonsini Goodrich & Rosati ("Wilson") from representing Defendant.  (Dkt. No. 29.)  Non-party Wilson Sonsini Goodrich & Rosati filed a response.  (Dkt. No. 35.)  A reply was filed by Plaintiff.  (Dkt. No. 36.)  The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1).  After a review of the briefs, supporting documentation, and the applicable law, the Court DENIES Plaintiff's motion to disqualify Wilson Sonsini Goodrich & Rosati.

## Background

On November 20, 2020, Plaintiff Avalyn Pharma, Inc. ("Plaintiff or "Avalyn") filed a declaratory judgment action against Defendant Richard G. Vincent, Seller Representative ("Defendant" or "Vincent" or "Seller Representative").  (Dkt. No. 1,

Compl.)  Avalyn is in the business of researching and developing pharmaceutical products for the treatment of idiopathic pulmonary fibrosis ("IPF") and other severe respiratory diseases.  (Dkt. No. 1, Compl. ¶ 9.)  IPF is a fatal lung disease with no cure but two products exist to treat IPF but both are not well tolerated and only slow disease progression.  (*Id.*)  Avalyn is in the process of advancing an inhaled pirfenidone treatment, AP01, for IPF and is developing other pipeline candidates, including inhaled nintedanib for IPF and other severe respiratory diseases.  (*Id.*)

On March 13, 2017, Avalyn[1] entered into a Stock Purchase Agreement ("SPA") with Windward Pharma, Inc. ("Windward"), the Windward stockholders and Defendant Vincent, the Seller Representative.  (*Id.* ¶¶ 1, 10; Dkt. No. 1-2, Compl., Ex. 1, SPA.)  Under the SPA, Avalyn bought all of the outstanding shares of capital stock of Windward from the Windward stockholders, including acquiring title to intellectual property of patents and patent applications, ("Patent Rights"), owned by Windward, and Windward was subsequently merged into Avalyn.  (Dkt. No. 1, Compl. ¶¶ 1, 11.)  Section 2.05(a) of the SPA requires Avalyn to use commercially reasonable efforts to investigate the therapeutic and commercial potential of the Patent Rights and, if in its good faith judgment such potential exists, to develop and commercialize at least pharmaceutical therapies covered by at least one claim of the Patent Rights, ("Acquisition Products"), and pay Windward stockholders development milestone payments.  (*Id.* ¶¶ 1, 13.)  The first payment of $500,000 is due upon the first dosing of a subject in a Phase II Trial; the second payment of $500,000 is due upon the first dosing of a subject in a Phase III Trial; the third payment of $1,000,000 is due upon regulatory approval of an Acquisition Product.  (*Id.* ¶ 12.)  If Avalyn fails to comply certain provisions of the SPA, the Seller Representative must provide written notice of the breach and within 90 days of such

---

[1] Avalyn was originally named Genoa Pharmaceuticals, Inc. but changed its name to Avalyn in 2017. (Dkt. No. 29-2, Montgomery Decl. ¶ 2.)

notice, Avalyn must convey the Patent Rights to an entity of the Seller Representative's choosing. (Dkt. No. 1-2, Compl., Ex. 1, SPA § 2.05(c).)

Avalyn claims it has used commercially reasonable efforts to investigate and develop the Acquisition Product inhaled nintedanib and satisfied its obligations under the SPA. (Dkt. No. 1, Compl. ¶ 16.) It is also on track to advance inhaled nintedanib to Phase I clinical studies in December 2020. (*Id.*) Yet, on October 13, 2020, Defendant provided notice of Avalyn's alleged breach of the SPA. (*Id.* ¶ 27.)

In its complaint, Avalyn seeks a declaration that it is not in breach of the SPA executed on March 13, 2017, that breach of § 2.05(b) of the SPA cannot serve as a basis to demand the transfer of the Patent Rights or Acquisition Products to an entity of the Seller Representative's choosing, and that Avalyn is not required to transfer the Patent Rights or Acquisition Products to an entity of the Seller Representative's choosing. (Dkt. No. 1, Compl. ¶¶ 32-46.) In response, Defendant Vincent filed an answer and counterclaim for breach of the SPA and declaratory judgment that Avalyn must convey the Patent Rights to an entity of his choosing as required under the SPA. (Dkt. No. 14, Answer & Counterclaim ¶¶ 20-29.)

Defendant Vincent, a serial entrepreneur in biopharmaceutical start-ups, and Dr. Mark Surber ("Dr. Surber") co-founded Avalyn in May 2011 and also co-founded Windward in October 2013. (Dkt. No. 33-4, Vincent Decl. ¶ 3.) Avalyn and Windward were formed to develop treatment for severe respiratory disease. (*Id.* ¶ 6.) Vincent was the Chief Financial Officer ("CFO") and Dr. Surber was the Chief Executive Officer ("CEO") of both companies from their inception until the SPA and both were the sole officers of both companies. (*Id.*) They founded both companies with personal funds as well as with small investments from family, friends and a few angel investors. (*Id.* ¶ 4.) They operated both companies on a very limited budget and conducted much of the work themselves or with the help of a few outside consultants. (*Id.*) Neither company had any employees. (*Id.*)

1  On October 4, 2011, Avalyn retained Wilson to serve as legal counsel on "patent counseling, patent drafting, patent prosecution, and various other matters the Company may request." (Dkt. No. 29-4, McCord Decl., Ex. A at 3[2]; Dkt. No. 29-2, Montgomery Decl. ¶¶ 3, 4.) Wilson's legal counsel was limited to patent work and not corporate matters or patent litigation. (Dkt. No. 35-1, Johnson Decl. ¶ 4.) Specifically, Wilson was involved with patent prosecution and assisted Avalyn in preparing materials concerning its patent position to provide to potential investors, and attended meetings with those investors to answer their patent-related due diligence. (*Id.* ¶ 5.) Wilson prepared and prosecuted patents for AP01, Avalyn's inhaled pirfenidone product. (No. 29-2, Montgomery Decl. ¶ 5.) During this process, Avalyn provided Wilson with confidential, proprietary materials related to the research and development of its inhaled pirfenidone product. (*Id.*)

On November 5, 2013, Windward also retained Wilson as counsel to advise "with respect to certain intellectual property matters [ ]." (Dkt. No. 29-4, McCord Decl., Ex. C at 2.) In this role, Wilson prepared and prosecuted all of Windward's patents, including the Patent Rights that were transferred to Avalyn under the SPA. (Dkt. No. 29-2, Montgomery Decl. ¶ 11.) To prosecute these patents, Windward provided Wilson with confidential, proprietary information related to its research and development of imatinib, sorafenib, and nintedanib, including information about possible formulations for the compounds, the potential safety and efficacy of these compounds as inhaled products, their possible indications, and the competitive landscape, their potential profitability and the regulatory environment they are subject to. (*Id.*)

Latham and Watkins was Avalyn's and Windward's general counsel and provided legal counsel on both companies' business affairs, including day-to-day operations and attending board meetings. (Dkt. No. 33-4, Vincent Decl. ¶ 17.)

---

[2] Page numbers are based on the CM/ECF pagination.

In 2014, Avalyn began seeking Series A funding to advance its work on pirfenidone. (*Id.* ¶ 9.) At that time, Avalyn's board raised concerns about direct competition of its pirfenidone drug with Windward's drugs. (*Id.*) To address those concerns, in 2016, Avalyn and Windward entered into an option agreement where Avalyn had up to three years to exercise the option to acquire Windward. (*Id.*) However, at the insistence of the Series A investors, the option agreement was converted into the SPA in March 2017. (*Id.*) The SPA was a condition to close on the Series A financing which raised $62 million. (*Id.* ¶¶ 9, 10.)

After obtaining Series A financing, the institutional investors brought in new management to run Avalyn and moved its headquarters from San Diego, CA to Seattle, WA. (*Id.* ¶¶ 10, 11.) In March 2017, Dr. Bruce Montgomery replaced Dr. Surber as Avalyn's CEO and Vincent resigned as CFO two months later in May 2017 after the transition process.[3] (*Id.* ¶¶ 11, 21.) Dr. Montgomery replaced Wilson with other counsel in April 2017. (*Id.* ¶ 22; Dkt. No. 29-2, Montgomery Decl. ¶ 4.)

On August 20, 2021, Avalyn filed a motion to disqualify Wilson arguing it has a conflict of interest from its prior representation of Avalyn and Windward. (Dkt. No. 29.) The motion is fully briefed. (Dkt. Nos. 35, 36.)

## Discussion

**A.    Motion to Disqualify**

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'" *People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1145 (1999) (quoting Cal. Code Civ. Proc. § 128(a)(5)).

---

[3] Dr. Surber is Avalyn's current Chief Scientific Officer ("CSO"). (Dkt. No. 36 at 13.)

1  Disqualification of counsel lies within the sound discretion of the district courts. *Gas-A-*
2  *Tron of Arizona v. Union Oil Co. of California*, 534 F.2d 1322, 1325 (9th Cir. 1976).
3  When considering a motion to disqualify, this Court considers California law.  *See In re*
4  *Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). "Motions to disqualify counsel
5  are strongly disfavored." *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100,
6  1104 (N.D. Cal. 2003), *cf.*, *M'Guinness v. Johnson*, 243 Cal. App. 4th 602, 627 (2015)
7  ("[W]hile disqualification is a drastic measure and motions to disqualify are sometimes
8  brought by litigants for improper tactical reasons, disqualification is not 'generally
9  disfavored.'").

10  "Disqualification motions implicate competing considerations. On the one hand,
11  these include clients' rights to be represented by their preferred counsel and deterring
12  costly and time-consuming gamesmanship by the other side. '[T]he client has an interest
13  in competent representation by an attorney of his or her choice [citations] and perhaps,
14  the interest in avoiding inconvenience and duplicative expense in replacing counsel
15  already thoroughly familiar with the case.'" *Banning Ranch Conservancy v. Superior*
16  *Ct.*, 193 Cal. App. 4th 903, 911 (2011).  "Balanced against these are attorneys' duties of
17  loyalty and confidentiality and maintaining public confidence in the integrity of the legal
18  process." *Beachcomber Mgmt. Crystal Cove, LLC v. Superior Ct.*, 13 Cal. App. 5th
19  1105, 1116 (2017), *as modified* (July 28, 2017).

20  "California courts have identified two separate categories in which actual or
21  potential conflicts of interest arise in counsel's representation of multiple clients.  One is
22  the successive representation of multiple clients resulting in a conflict of interest, i.e.,
23  where the attorney's representation of the current client may conflict with the interests of
24  a former client . . . . Under those circumstances, 'the courts have recognized that the chief
25  fiduciary value jeopardized is that of client confidentiality.' [citation]  The other
26  circumstance is the concurrent (or dual) representation of multiple clients resulting in a
27  conflict of interest . . ., in which '[t]he primary value at stake . . . is the attorney's duty—
28  and the client's legitimate expectation—of loyalty, rather than confidentiality.'"

*M'Guinness,* 243 Cal. App. 4th at 613. Here, Plaintiff's motion implicates the successive representation of multiple clients category.

### B.  Successive Representation – Duty of Confidentiality

In a successive representation case, if the attorney fails to obtain an informed written consent waiving a conflict, a party may move to disqualify its former counsel from representing a successive client in current litigation adverse to the former client's interests. *City & Cnty. of San Francisco v. Cobra Sols., Inc.*, 38 Cal. 4th 839, 847 (2006) (citing *Flatt v. Superior Ct.*, 9 Cal. 4th 275, 283 (1994)). In such cases, the former client must show a "'substantial relationship' between the subjects of the antecedent and current representation." *Flatt*, 9 Cal. 4th at 283. A substantial relationship between successive representation exists where "the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation." *City & Cnty. of San Francisco*, 38 Cal. 4th at 847 (citation omitted). Once a substantial relationship is established, the attorney is automatically disqualified from representing the second client, and "disqualification extends vicariously to the entire firm." *Flatt*, 9 Cal. 4th at 283. Whether two representations are substantially related depends on looking at the factual similarities, legal questions, and the nature and extent of the attorney's involvement in the two cases. *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal. App. 4th 223, 234 (1999). In cases of successive representation, "the chief fiduciary value jeopardized is that of client confidentiality." *Flatt,* 9 Cal. 4th at 283.

California courts have recognized an exception to the substantial relationship test in closely held derivative shareholder actions. *See Forrest v. Baeza*, 58 Cal. App. 4th 65 (1997). In these cases, a shareholder brings a derivative lawsuit on behalf of the company when the insiders who control the company breach their fiduciary duties. *Beachcomber Mgmt. Crystal Cover LLC v. Superior Ct.,* 13 Cal. App. 5th 1105, 1118 (2017). The shareholder is the plaintiff in name only because he or she seeks to redress an injury that the company suffered and any recovery belongs to the company. *Id.*

Further, even though the corporation is named as a nominal defendant; in fact, the corporation is the true plaintiff. *Id.* Therefore, it is established law that an attorney's concurrent representation of both the company, as the true plaintiff, and the insider defendants, in a derivative action alleging that the insiders breached their fiduciary duties, is barred due to a conflict of interest. *Id.*; *Ontiveros v. Constable*, 245 Cal. App. 4th 686, 696 (2016) (citations omitted) ("Current case law clearly forbids dual representation of a corporation and directors in a shareholder derivative suit, at least where, as here, the directors are alleged to have committed fraud.").

However, in a case involving successive representation, "even though a substantial relationship exists between the attorney's previous representation of the company and the attorney's current representation of insiders in the company's lawsuit against them", it does not bar the attorney from representing the insiders in a derivative action. *Beachcomber Mgmt.,* 13 Cal. App. 5th at 1118. "This separate rule derives from a recognition that insiders are the source of a closely held company's confidential information." *Id.* at 1118-19. In *Beachcomber Mgmt.*, the court of appeal explained that in a small or closely held company, the few insiders responsible for operating a small company often know all of the company's confidential information that any "distinction between the two is entirely fictional." *Id.* at 1119. Because the insiders are usually "the repositories and source of all confidential information an attorney may receive in representing the company", it would be useless to apply the successive representation rules because the insiders could provide their new attorney with the same information their prior counsel had. *Id.* This would only generate unnecessary attorney's fees for a new attorney to catch up and learn the case. *Id.* As such, in these cases, the attorney's representation of the insiders does not threaten the attorney's duty of confidentiality to the company because the insiders already are privy to all of the company's confidential information." *Id.* at 1112; *see also Forrest*, 58 Cal. App. 4th at 82 ("in the factual circumstances of this case, where [the attorney] has been representing a corporation comprised of three shareholders solely by virtue of his relationship with . . . the majority

directors/shareholders, it is impossible to conceive of confidential information [the attorney] could have received from the 'corporation' that is different from information he received from the [majority shareholders]."). Therefore, an "attorney who previously represented both a closely held company and its insiders [may] continue representing the insiders in a derivative lawsuit brought on the company's behalf against the insiders." *Beachcomber Mgmt.,* 13 Cal. App. 5th at 1118.

In this case, the Court concludes that the exception to the substantial relationship test applies to Wilson's successive representation of Vincent, an "insider" or former corporate officer of Avalyn and Windward, two small or closely held start-up companies. Vincent, as one of the two corporate officers, was the repository of all confidential and proprietary information of Avalyn and Windward. The Court recognizes that the *Forrest* exception has been applied primarily to shareholder derivative suits; however, the reasoning and the considerations of an attorney's ethical duties behind this exception apply squarely to the unique set of facts of this case.

A corporation is "an artificial person" that "acts through its members, or officers, or agents." *Dearborn v. Grand Lodge, A.O.U.W.*, 138 Cal. 658, 663 (1903); *People v. Parker*, 235 Cal. App. 2d 86, 93 (1965) ("A corporation, of course, can acquire knowledge only through its officers and agents."). Here, as counsel for Avalyn and Windward, Wilson necessarily obtained confidential and proprietary information from Vincent and/or Dr. Surber, the only corporate officers of both companies during their years as counsel. (Dkt. No. 33-4, Vincent Decl. ¶ 3.) Vincent asserts he was intimately involved in or informed of all aspects of the businesses and there was no aspect of either business that was kept confidential from him. (*Id.* ¶ 5.) Dr. Surber and Vincent met regularly to run the business. (*Id.*) Vincent attended weekly or periodic meetings with their outside consultants, including their attorneys, attended most of the investor prospect meetings, and attended all the pre-Series A board meetings of both companies. (*Id.*) As such, Vincent knew and/or had access to all of both companies' confidential and proprietary information. (*Id.* ¶¶ 5, 18.) Further, because Vincent had knowledge of, and

access to, all of both companies' information, Wilson has nothing he can tell Vincent about both companies that he does not already know. (*Id.* ¶ 18.) Moreover, Wilson stopped working with both companies at the same time when Vincent resigned. (*Id.*) Vincent further explains that he was selected the Seller Representative even though he had full knowledge and access of Avalyn and Windward's confidential and proprietary information. (*Id.* ¶ 13.) Therefore, any confidential information Wilson may have been exposed to was also accessible by Vincent.

In reply, Plaintiff maintains that this exception applies solely to shareholder derivative actions but does not provide persuasive authority in support. For instance, Avalyn cites to *Fujitsu Ltd. v. Belkin Int'l, Inc*. No. 10cv3972-LHK, 2010 WL 5387920, at *6 (N.D. Cal. Dec. 22, 2010) to support the position that the narrow exception held in *Forrest* should not be expanded beyond shareholder derivative lawsuits. However, in *Fujitsu*, the district court stated that the exception to the substantial relationship test in *Forrest* did not apply because that "the unique circumstances at issue in a shareholder derivative lawsuit are not present." *Id.* at *6. *Fujitsu* concerned disqualification of a law firm involved in three separate legal matters with three large publicly held companies; it did not involve the law firm representing small or close-held corporations. Therefore *Fujitsu Ltd.*, does not foreclose this Court from considering *Forrest* in this case.

Plaintiff makes an additional argument that there has been no showing that the confidential material Avalyn and Windward provided to Wilson was also actually known to Vincent, (Dkt. No. 36 at 11). However, a similar argument was rejected by the court of appeal in *Beachcomber Mgmt*. There, the court of appeal rejected the plaintiffs' argument that there was no evidence showing that the defendants were in charge of the company's operations or was the sole repository of its confidential information and noted that "the critical inquiry is whether the insiders possessed or had access to the same confidential information as the attorney who previously represented the company." *Id.* at 1112.

Here, Vincent has declared that he had knowledge of and access to all of Avalyn's and Windward's confidential and proprietary information. (Dkt. No. 33-4, Vincent Decl. ¶ 18.) Avalyn has not provided a competing declaration[4] disputing Vincent's knowledge and access to both companies' confidential and proprietary information.[5] Because Vincent was the repository of confidential and proprietary information when Wilson was counsel to Avalyn and Windward, Wilson's duty of confidentiality towards its former client, Avalyn, is not jeopardized by having Wilson represent Vincent, a former officer of Avalyn, as he would have been the source of any confidential or proprietary information. Therefore, Wilson's continued representation of Vincent poses no threat to Wilson's continuing duty of confidentiality to Avalyn. *See Ontiveros*, 245 Cal. App. 4th at 700-01. Thus, the Court DENIES Plaintiff's motion to disqualify based on the duty of confidentiality.

C.  **Successive Representation - Duty of Loyalty**

For the first time in its reply, Avalyn argues that Wilson should be disqualified because its duty of loyalty to its former client is being violated by Wilson's representation of Vincent. (Dkt. No. 36 at 12.) First of all, "[i]t is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers. *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000); *see also State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) ("[Parties] cannot raise a new issue for the first time in their reply briefs.").

---

[4] For instance, Dr. Surber, Avalyn's current CSO, who was the other corporate officer of Avalyn and Windward prior to the execution of the SPA, did not submit a declaration.

[5] The Court notes that Plaintiff presents factual assertions in its briefs disputing facts in Vincent's declaration but fails to provide any evidentiary support. For example, Plaintiff claims that "Vincent does not have access to Avalyn's corporate files, including files from his time with the company nor those generated after his departure, so there is a substantial risk that Wilson could disclose confidential information that Vincent does not possess." (Dkt. No. 36 at 10-11.) Avalyn also claims, without evidentiary support, that Vincent did not invent the patents and had no role in patent strategy or in preparing or prosecuting the Patent Rights and that Dr. Surber was the key architect in Avalyn's and Windward's strategies to develop IPF treatment. (*Id.* at 11, 13.) Therefore, because these facts are unsupported, the Court did not consider them.

Nonetheless, even if the Court considers Plaintiff's argument regarding the duty of loyalty in a successive representation case, it is without merit. Even though the duty of loyalty is the primary concern in simultaneous representation cases and the duty of confidentiality is the key concern in successive representation cases, *Flatt,* 9 Cal. 4th at 283-84; *Ontiveros*, 245 Cal. App. 4th at 700 ("the duty of loyalty is the proper focus in *concurrent* representation cases; the duty of confidentiality is the proper focus in *successive* representation cases"), there is a continuing duty of loyalty after an attorney's representation has ended. *See Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. C–14–1575 EMC, 2014 WL 2703807, at *3 (N.D. Cal. June 13, 2014) (the language in *Flatt* "does not mean there is no duty of loyalty in a successive representation scenario") (citing *Damron v. Herzog*, 67 F.3d 211, 214 (9th Cir. 1995) (applying Idaho law concluding "just as the attorney-client relationship remains intact for purposes of a continuing duty of confidentiality, so does it remain intact for purposes of a continuing duty of loyalty with respect to matters substantially related to the initial matter of engagement")); *City & Cnty. of San Francisco v. Cobra Sols., Inc*., 38 Cal. 4th at 846 (noting an attorney's two ethical duties).

"Under California law, attorneys owe current clients a duty of undivided loyalty." *Emblaze Ltd. v. Microsoft Corp*., No. 12-CV-05422-JST, 2014 WL 2450776, at *2 (N.D. Cal. May 30, 2014) (quoting *Flatt*, 9 Cal. 4th at 284). "[I]t is a violation of the duty of loyalty for the attorney to assume a position adverse or antagonistic to his or her client." *State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co*., 72 Cal. App. 4th 1422, 1431 (1999). However, once representation has ended, the "duty of loyalty to a former client is more limited than the duty of loyalty to a present client. This duty prohibits an attorney from engaging in any act that will injure the former client in matters involving the former representation." *In re Jaeger*, 213 B.R. 578, 589 (1997).

In reply, Avalyn argues that Wilson has a duty of loyalty based on Wilson's former representation of Avalyn. (Dkt. No. 36 at 13.) While representing Avalyn, Wilson prosecuted patents related to Avalyn's pirfenidone and had access to confidential and

proprietary materials related to research and development of this product.  (Dkt. No. 29-2, Montgomery Decl. ¶ 5.)  Avalyn contends that now, in discovery, Vincent seeks the same information concerning Wilson's prior representation, i.e., all documents related to the prosecution or maintenance of any patents concerning pirfenidone, for the purpose of taking these Patent Rights away from its former client, Avalyn.  (Dkt. No. 36 at 13.)

        The Court agrees that Wilson has a continuing duty of loyalty to Avalyn which bars it from doing anything that will injure the former client concerning the former representation; however, the current contract dispute is not challenging the validity of the Patent Rights or the prior patent prosecution work Wilson conducted on behalf of Avalyn, but instead challenges the ownership of those Patent Rights based on the provisions of the SPA.  Because this case involves a breach of contract issue, Avalyn has not shown that Wilson's attempt to discover confidential or proprietary information concerning patent prosecution of pirfenidone will injure it in this litigation.

        Moreover, in a recent discovery ruling, on July 30, 2021, the Magistrate Judge denied Vincent's request for an order requiring Plaintiff to provide further responses to interrogatories and document requests concerning the "pirfenidone discovery requests" as not relevant and overly broad and unduly burdensome.  (Dkt. No. 27 at 3-14, 20.)  Therefore, Vincent will not even gain access to these materials related to pirfenidone.  Therefore, the Court DENIES Plaintiff's motion to disqualify based on the duty of loyalty.

## Conclusion

        Based on the above, the Court DENIES Plaintiff's motion to disqualify and enjoin Wilson, Sonsini Goodrich & Rosati.

        IT IS SO ORDERED.

Dated: November 4, 2021

Hon. Gonzalo P. Curiel
United States District Judge